■ WILLIAM BLOCK, Appellant, v JOHN MAGEE et al., Respondents.—In an action, *inter alia,* to recover damages for wrongful expulsion from a corporation as a shareholder, the plaintiff appeals from an order and judgment (one paper) of the Su-

preme Court, Rockland County (Weiner, J.), dated January 14, 1988, which, upon granting the defendants' motion for summary judgment, dismisses the complaint and is in favor of the defendants and against him in the principal sum of $100,000 on their counterclaim.

Ordered that the order and judgment is reversed, on the law, with costs, and the motion is denied.

On September 21, 1979, the plaintiff William Block and the individual defendants, John Magee, Patrick Magee and Donald DeFilippis, executed a stockholders' agreement whereby they formed the defendant corporation, Rockland Racquetball Club Limited (hereinafter the club). The agreement provided, inter alia, that the plaintiff and the individual defendants were "the sole holders of all the issued and outstanding stock" in the corporation. Article I provided that the plaintiff's capital contribution was to be $180,000, and the contribution of DeFilippis was to be $50,000. For their contributions, the plaintiff and DeFilippis were to receive 100 shares of stock which they were to distribute "proportionately to their capital contributions". John Magee and Patrick Magee were to pay $250,000 in cash or materials, in consideration of which they were to receive a total of 100 shares of stock.

The stockholders' agreement further provided that the corporation had leased premises owned by Bradley Industrial Park, Inc. simultaneously with the execution of the agreement. Leasehold improvements were to be undertaken by Magee Blauvelt Corp. Both Bradley Industrial Park, Inc. and Magee Blauvelt Corp. were owned exclusively by the defendants John and Patrick Magee. Under article III of the stockholders' agreement "[t]he affirmative vote and consent of 75% of the stockholders, directors and officers shall be required when the vote of such stockholders, directors or officers is required for the transaction of business". The officers and directors were the plaintiff as president, John Magee as vice-president, Patrick Magee as secretary, and Donald DeFilippis as treasurer.

Simultaneously executed with the stockholders' agreement were a consultation agreement and an employment agreement. Under the consultation agreement the plaintiff was employed by the club to "give [his] opinions as to the manner of the operation of the [club's] [b]usiness", and, for such services he was to be paid out of the club's net cash flow. Under the employment agreement the plaintiff's employment was to "terminate on the date the club ceases operation". Under the employment agreement, the plaintiff was to be paid

a basic minimum salary of $18,000 per year, and also quarterly bonuses of 12.5% of the gross income of the club less the total payroll of the club.

The record shows that while the plaintiff was performing his regular services at the club on August 11, 1982, he was approached by the three individual defendants and called into a meeting, during which both his consultation and employment contracts were terminated. Concededly, the meeting was held without prior notice being given to the plaintiff. The plaintiff claims that on the date of the purported termination of his employment and being "thrown out" of the management of the corporation, he had paid $164,083 of his $180,000 capital contribution; the defendants contend that he had paid only approximately $163,000.

On this appeal, the defendants essentially raise the same arguments upon which the hearing court granted their motion for summary judgment and dismissed the complaint. They contend that the plaintiff was not a shareholder because he had not paid the full amount of his subscription and that no shares were physically issued to him; that the plaintiff waived the requirement of notice pursuant to Business Corporation Law § 606 because he attended the meeting without protesting; that the plaintiff lacks standing to bring any action for cost overruns in the leasehold improvements; and that the plaintiff is not entitled to damages either under the employment agreement or the consultation agreement contract since the corporation never had any net cash flow. They ask this court to disregard the plaintiff's entire brief because it consists of arguments being raised for the first time on appeal.

Preliminarily, it is noted that appellate review is limited to the record made at the nisi prius court and, absent matters which may be judicially noticed, new facts may not be injected at the appellate level (*Interfaith Med. Center v Shahzad*, 124 AD2d 557; *Broida v Bancroft*, 103 AD2d 88). This rule is inapplicable where the appellant is not injecting new facts, but is merely arguing questions of law. In that event, the rule is that an issue which was not raised before the nisi prius court is reviewable by this court if the question presented is one of law "which appeared upon the face of the record and which could not have been avoided by [the respondent] if brought to [his] attention at the proper juncture" (*Matter of Knickerbocker Field Club v Site Selection Bd.*, 41 AD2d 539, 540; *Matter of Burkins v Scully*, 108 AD2d 743, 744; *Matter of Block v Franklin Sq. Union Free School Dist.*, 72 AD2d 602). At bar, the plaintiff's brief alleges no new facts, but rather

raises legal arguments which could not have been avoided by the defendants if they had been raised in the Supreme Court. Thus, the arguments raised by the plaintiff may be considered.

On the defendants' argument that the plaintiff was not a shareholder because he had not paid his full subscription, we find that their reliance on Business Corporation Law § 504 (b) and (h) is misconceived. While the statute makes clear that obligations of future payments shall not constitute payments or part payments for shares, it does not provide that shares which have been issued, but for which full payment has not been made therefor are void. Violation of the section renders the stock voidable, not void *(see, Gilbert Paper Co. v Prankard,* 204 App Div 83; *Sarasohn v Jergens Co.,* 45 NYS2d 888; *Kimmel Sales Corp. v Lauster,* 167 Misc 514). In line with the principle established in these cases, the shares held by the plaintiff were merely voidable, not void. At the time this action was commenced the plaintiff had paid between $163,000 and $164,083. The individual defendants had considered him as a stockholder and a principal of the corporation since its inception. They never moved to declare his shares void by reason of the fact that they had been issued in violation of Business Corporation Law § 504. Thus, they are now estopped from arguing that the plaintiff was not a shareholder or that the shares are void. As noted in *Kimmel Sales Corp. v Lauster (supra,* at 522, quoting from 14 CJ, Corporations, § 613, at 452) " '[a]n issue of stock by a corporation as a bonus or gratuity, at less than its par value, or on payment therefor in property at an overvaluation, is binding * * * by estoppel, even when in violation of a constitutional or statutory provision, upon participating, consenting or acquiescing stockholders and their transferees, so that they cannot sue to set the transaction aside' ". At bar, the individual defendants were participating, consenting and/or acquiescing stockholders in issuing stock to the plaintiff in violation of Business Corporation Law § 504, and are estopped from contesting its validity.

Further, the stockholders' agreement provided that the 100 shares to be issued to the plaintiff and DeFilippis were to be distributed "proportionately to their capital contributions". That being the case, the plaintiff fully paid for approximately 71 shares of the corporate stock, representing 35.5% of the outstanding stock. His affirmative vote was, therefore, necessary for the corporation to obtain the 75% affirmative vote required for it to conduct business.

We also find that Business Corporation Law § 606 is inapplicable. That section states that notice of a meeting is waived if

a shareholder attends a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting. In the instant case, the plaintiff concedes that he attended the August 11, 1982, meeting, but he argues that he protested the lack of notice and voted "no". While the defendants contest the plaintiff's claim, the conspicuous absence of the plaintiff's signature from the minutes of that meeting supports his claim. It is inconceivable that one whose vote could block the proposal, and who in fact believed at that time that his vote could block the proposal, would decide not to vote on a proposal with which he disagreed. Assuming, arguendo, that the plaintiff did not protest the lack of notice and did not vote, the resolution terminating his association with the corporation could still not have been passed since the 75% affirmative vote required for the purpose was lacking. In this regard also, we note that the defendants' argument raised in the Supreme Court that the 100 shares of stock were "jointly co-owned" by the plaintiff and the defendant DeFilippis was clearly misconceived.

Finally, the defendants concede that the club opened for business. Under the terms of the consultation agreement, the plaintiff's employment was only to be terminated "on the date the [corporation] ceases operation". The various contentions as to whether or not the corporation had a net positive cash flow out of which the plaintiff was to be paid raise a question of fact which the triers of fact must decide. The defendants' motion for summary judgment on their counterclaim for $100,000 is also denied on the ground that there are triable issues of fact outstanding. Mollen, P. J., Thompson, Rubin and Spatt, JJ., concur.