■ In the Matter of the Dissolution of PICKWICK REALTY, LTD. BERNARD J. LAWLER, Respondent; PICKWICK REALTY LTD., Appellant. [668 NYS2d 84] —Peters, J. Appeals (1) from an order of the Supreme Court (Coutant, J.), entered February 28, 1997 in Chenango County, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Business Corporation Law § 1104-a, to direct the judicial dissolution of respondent, and (2) from an order of said court, entered May 21, 1997 in Chenango County, which denied respondent's motion for, *inter alia*, reconsideration.

The underlying facts relevant to this proceeding were reviewed by us in *Matter of Pickwick Realty (Lawler)* (158 AD2d 840). Therein, petitioner, as a one-third owner of respondent, moved for dissolution alleging fraudulent or oppressive acts of the shareholders. Two of respondent's shareholders, Richard Devine and Charles Shorter, denied that petitioner ever acquired a position as a shareholder. Due to "serious questions of credibility" (*id.*, at 841), we remitted the matter to Supreme

Court for a hearing to determine petitioner's status with respect to the ownership of stock.

Upon remittal, petitioner testified that prior to his employment with the Hubert L. Brown law office in 1969, he discussed with Devine and Shorter the possibility that he might become a partner in the law partnership in two or three years. In 1972 he accepted their offer to acquire a one-third interest in the existing partnership for $100,000, which would take the form of either a partnership, a professional corporation, a leasing corporation or a combination thereof. Petitioner testified that he agreed to and did make a $10,000 down payment and was obligated to sign a promissory note for the remaining $90,000. Petitioner explained that the $10,000 down payment was put into a newly formed professional corporation, at the request of Devine and Shorter, for convenience and tax purposes. Petitioner testified that as a result of this agreement, he ultimately received a one-third ownership interest in both the professional corporation and respondent* (with Shorter and Devine as the other shareholders) as reflected in the stock certificates issued yet kept in the corporate books retained in the law office.

By the documentary and testimonial evidence it was clear that all financial documentation and tax forms represented petitioner as a one-third owner and shareholder in both respondent and the professional corporation. He was elected a director of respondent and was required to sign personal guarantees for lease and mortgage commitments. Due to a concern regarding his fulfillment of obligations under their agreement, petitioner proffered an additional $4,000 in 1973 and in 1981 requested a meeting at which price was further discussed and where adjustments were made to offset money previously withdrawn by Devine and Shorter (hereinafter collectively referred to as the shareholders) and to correct the originally inflated value of respondent. At the conclusion of such meeting, petitioner believed that his balance was to be paid no later than his death, funded by life insurance already undertaken by the shareholders, and that such debt was noninterest bearing. Upon leaving the practice in 1982, petitioner ceased receiving documentation regarding both respondent and the professional corporation and was later removed as a director.

The shareholders each testified that petitioner was never a partner, although treated as one, because he failed to sign a

---

* Respondent was formed in 1972 as the holding company for, *inter alia*, the real estate upon which the law offices were located.

partnership agreement, an alleged stock subscription or a promissory note for his remaining debt. Remarkably, they testified that even though petitioner was held out to the public as a shareholder and partner of both the professional corporation and respondent and that all tax forms and financial paperwork submitted to the Internal Revenue Service and other financial institutions so reflected petitioner's claimed interest, these representations were untrue. Devine testified that petitioner was represented to be a one-third owner on all of these various documents because he expected that petitioner would ultimately sign a partnership agreement and promissory note. He explained that he did not want to reflect more of an interest than he expected to own in the respective entities. Devine further testified that although respondent's stock certificate reflecting petitioner's claimed ownership was prepared, it was never actually issued to petitioner.

Carol Syster, a former employee of the shareholders who was responsible for drafting the minutes of all corporate meetings for the professional corporation, respondent and other clients, testified to preparing respondent's stock certificate to petitioner and later voiding it at the direction of Devine after petitioner's departure. Syster also testified that some of respondent's corporate minutes were now missing and that following petitioner's departure, Devine further directed her to retype pages of the minute book using the blank pages thereof so that they would appear to have been originals.

Finally, respondent's accountant testified that all entries to tax documents were at the direction of the shareholders and signed by them. He also had no knowledge that petitioner was believed to be anything other than a one-third owner in the subject entities.

Supreme Court found the stock certificate and the minutes of the Board of Directors meetings to be "prima facie proof that petitioner had been issued the stock without any reservation or condition". With the testimony of the shareholders that they knowingly had engaged in a fraud on the public with respect to petitioner's ownership interest for almost 10 years contradicting all supporting documentary evidence, the court determined that petitioner was a one-third owner and had been issued the respective shares of respondent's stock. Finding the actions of the shareholders to have defeated petitioner's "reasonable expectations", it ordered the liquidation of respondent. If the shareholders wished to avoid such dissolution, the court permitted them to exercise the option of purchasing petitioner's shares at their fair value and upon conditions and terms ap-

proved by the court. After the appointment of a Referee to, *inter alia,* conduct an accounting, dispose of corporate assets and determine the fair value of the shares, respondent unsuccessfully moved for reconsideration. With Supreme Court finding that respondent was "estopped from denying the validity of the issuance" (*Block v Magee,* 146 AD2d 730, 733), petitioner's ownership of the requisite interest in respondent entitled him to maintain this proceeding for dissolution. All remaining questions were referred to the Referee. Respondent appeals both orders.

Our review reveals that Supreme Court did not exceed its discretion in determining that the shareholders' testimony was not credible in light of the documentary evidence and the testimony of Syster, coupled with their open admission to perpetrating a fraud on the public for almost 10 years in representing petitioner to be a one-third owner in all corporate entities. Accordingly, such determination will not be disturbed (*see, Ferracane v Grandview Estates Constr. Corp.,* 202 AD2d 780, 781, *lv denied* 83 NY2d 759; *Matter of Cristo,* 86 AD2d 700, 701; *Bolnick v State of New York,* 84 AD2d 866).

Fully acknowledging the outstanding debt, we find the record to further support Supreme Court's determination that petitioner's shares were voidable, not void, and that the shareholders' attempt at so voiding his shares was invalid (*see, Block v Magee, supra,* at 733). With such sufficient credible evidence to support petitioner's claimed interest in respondent, we agree with Supreme Court that a protectable interest arose pursuant to the terms of Business Corporation Law § 1104-a (*see, Matter of Kemp & Beatley [Gardstein],* 64 NY2d 63, 72-73; *see also, Matter of Heisler v Gingras,* 90 NY2d 682). Supreme Court's ordering of dissolution following its consideration of the shareholders' attempt at voiding petitioner's shares, their falsification of corporate documents and their failure to allow petitioner access to records and documents, was proper in the totality of these circumstances and fully necessary to protect petitioner's interest (*see, Matter of Kemp & Beatley [Gardstein], supra,* at 72-74). With the option remaining for the purchase of petitioner's shares prior to such dissolution (*see, id.,* at 74; *DiPace v Figueroa,* 223 AD2d 949), we decline to disturb Supreme Court's ruling.

As to the contentions raised on the motion for reconsideration, we again find no error either in the denial thereof or in the reference of outstanding issues to the assigned Referee.

Accordingly, we affirm the orders of Supreme Court in their entirety.

Cardona, P. J., White, Spain and Carpinello, JJ., concur. Ordered that the orders are affirmed, with costs.