[729 NYS2d 734]

In the Matter of ADAM S., Appellant. PAMELA WEINBERG, as Clinical Director at Pilgrim Psychiatric Center, Respondent.

Second Department, August 27, 2001

**APPEARANCES OF COUNSEL**

*Mental Hygiene Legal Service,* Mineola (*Dennis B. Feld, Kim L. Darrow* and *Valdi Licul* of counsel), for appellant.

*Eliot Spitzer, Attorney General,* New York City (*Marion R. Buchbinder* and *Thomas B. Litsky* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

The appellant was admitted to Pilgrim Psychiatric Center (hereinafter the hospital) on October 23, 2000, as an involuntary patient. He was diagnosed as suffering from schizoaffective disorder and refused to undergo electroconvulsive therapy (hereinafter ECT). In response to his refusal to undergo the recommended treatment, the hospital commenced a special proceeding seeking permission to administer ECT to him. The hospital's petition alleged, *inter alia,* that the appellant lacked the capacity to either give or withhold consent for the treatment and without such therapy the appellant would remain paranoid and aggressive. The petition listed the appellant's mother as his only known next of kin. A second petition was filed, seeking permission to perform a complete physical examination and work-up procedures, including sedation, to obtain medical clearance for the ECT. A hearing on the petitions was held on November 22, 2000, at which the appellant was represented by Mental Hygiene Legal Service. At the hearing, Dr. Kalani, a psychiatrist and the Director of the hospital's

ECT unit, testified in support of the administration of ECT. While the appellant refused to attend the hearing, his mother, sister, and brother-in-law were present and each testified that they opposed the administration of ECT to the appellant. The Supreme Court issued two orders, both entered November 22, 2000. The first order, upon determining that the appellant lacked the capacity to give or withhold consent to ECT, authorized the hospital to administer the therapy to him. The second order, upon determining that the appellant lacked the capacity to give or withhold consent to the medical examination and work-up, authorized the hospital to perform the specified medical tests on him to obtain medical clearance for administering ECT. By decision and order on motion dated January 8, 2001, this Court granted a stay of enforcement of the orders, pending the hearing and determination of the appeals.

The issue presented on these appeals is whether the failure to join the appellant's mother as a party in the special proceeding deprived the Supreme Court of subject matter jurisdiction. The appellant contends, for the first time on appeal, that it is undisputed that he lacked the capacity to give or withhold consent and since his mother qualified as a surrogate decision maker under 14 NYCRR 27.9 (b), with the right to make treatment decisions which would bind the hospital, it was the mother's objection to treatment that was at issue in the proceeding and therefore she should have been joined as a necessary party.

We reject the argument that the failure to join the appellant's mother as a party impacted upon the Supreme Court's subject matter jurisdiction. "The Supreme Court is a court of general jurisdiction, and it is competent to entertain all causes of actions unless its jurisdiction has been specifically proscribed (N. Y. Const., art. VI)" (*Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159, 166). Even if it was error for the Supreme Court to entertain the proceeding without joining the appellant's mother, such error would have affected the Supreme Court's power to reach the merits of the petition, not its competence to entertain the suit (*see, Lacks v Lacks,* 41 NY2d 71, 75).

We nevertheless reach the issue of whether the hospital was required to join the appellant's mother as a party to the proceeding, despite the lack of preservation, since the issue is not based upon facts brought up for the first time on appeal, but rather, involves a question of law which appears on the face of the record (*see, Block v Magee,* 146 AD2d 730, 732-733).

█ Resolution of this issue involves the interplay among certain regulations promulgated under article 33 of the Mental Hygiene Law and a patient's fundamental right to control the course of his own treatment as affirmed by the Court of Appeals in the seminal case of *Rivers v Katz* (67 NY2d 485).

Pursuant to 14 NYCRR 27.9, insofar as relevant here:

> "Electro-convulsive therapy * * * may be administered to any patient only upon the informed consent of the patient or of a person authorized to act on his or her behalf after a full and comprehensive disclosure of potential benefits and the potential of harm * * *

> "(b) If a patient is 18 years or older but in the opinion of the chief of the service does not have sufficient mental capacity to give consent, authorization for the procedure in question must be obtained from the spouse, a parent, an adult child, *or* a court of competent jurisdiction" (emphasis supplied).

Thus, the appellant's argument finds no support in the language of section 27.9, which plainly states that consent may be obtained from a court of competent jurisdiction in the first instance and imposes no requirement or preference for a family member as surrogate decision maker. Further, it ignores the principles of autonomy and free choice broadly construed by the Court of Appeals in *Rivers v Katz (supra)*.

In *Rivers*, the Court of Appeals reaffirmed the fundamental principle "that every individual 'of adult years and sound mind has a right to determine what shall be done with his own body' * * * and to control the course of his medical treatment" (*Rivers v Katz, supra,* at 492). This right of the individual to refuse a proposed course of treatment implicates the right to privacy and is of constitutional dimension. It extends to involuntarily-committed patients in psychiatric facilities the right to a judicial determination as to the propriety of a recommended course of treatment over objection. Thus, where a patient refuses "to consent to the administration of antipsychotic drugs, there must be a judicial determination of whether the patient has the capacity to make a reasoned decision with respect to proposed treatment before the drugs may be administered" (*Rivers v Katz, supra,* at 497). If the hearing court concludes by clear and convincing evidence that the "patient lacks the capacity to determine the course of his own treatment, the court

must determine whether the proposed treatment is narrowly tailored to give substantive effect to the patient's liberty interest" (*Rivers v Katz, supra,* at 497). Although *Rivers* dealt with the administration of antipsychotic drugs, its holding has been applied to the forcible administration of ECT (*see, Matter of Rosa M.,* 155 Misc 2d 103). Indeed, the Commissioner of the Office of Mental Health (hereinafter the Commissioner) subsequently promulgated additional regulations to govern the treatment of patients over objection and so codify the holding in *Rivers* (*see,* 14 NYCRR 527.8). In 1993, those regulations were amended to specifically make the involuntary use of ECT subject to its more stringent protections, to clarify that use of this form of treatment over a patient's objection could only be performed pursuant to a court order and that the new regulations supersede any inconsistent provisions contained in 14 NYCRR part 27 (*see,* 14 NYCRR 527.1 [c]). Thus, consent for ECT may no longer be based on a determination by a surrogate decision maker.

Specifically, 14 NYCRR 527.8 (c) (4) (i) provides that "patients on involuntary status may not be given a medical procedure or course of treatment over their objection without court authorization." "Treatment" is defined as including "electroconvulsive therapy" (*see,* 14 NYCRR 527.8 [a] [7]). If the clinical director of a hospital determines that a patient who objects to the proposed treatment lacks capacity to make a reasoned decision concerning treatment, and the proposed treatment is in the patient's best interests, he or she may apply for court authorization of treatment (*see,* 14 NYCRR 527.8 [c] [4] [i]). It is apparent that under this amended regulatory scheme, consent by a family member is no longer sufficient to authorize treatment over the patient's objection.

The Legislature has given the Commissioner the power to adopt regulations to ensure that mentally-ill persons are provided with care and treatment and that their civil rights are adequately protected (*see,* Mental Hygiene Law § 7.07 [c]; § 7.09 [b]). Regulations so adopted, if reasonable, have the force and effect of law (*see, Matter of Medical Socy. v New York State Dept. of Social Servs.,* 148 AD2d 144).

Guided by these principles, we hold that if a patient objects to the administration of ECT the hospital must proceed to a hearing to determine "whether the patient has the capacity to make a reasoned decision with respect to proposed treatment," (*Rivers v Katz, supra,* at 497) and if the patient does lack such capacity, the court must decide whether to authorize the

proposed treatment "taking into consideration all relevant circumstances, including the patient's best interests, the benefits to be gained from the treatment * * * and any less intrusive alternative treatments" (*Rivers v Katz, supra,* at 497-498). Although it may be advisable for courts faced with an objection to proposed treatment by a family member to inform the family member of their right to intervene and fully participate in the hearing (*see, Matter of Shirley C.,* 136 Misc 2d 843), we reject the contention that a hospital is required to join such a family member as a party, whether the proceeding is brought pursuant to 14 NYCRR 27.9 or 527.8. In so doing, we further reject the appellant's contention that the hearing must focus on whether the court should override a family member's objection to such treatment. While family members may advocate on behalf of the patient should they wish to do so, it is not the interests of the family members which are at stake, but that of the patient. Thus, in a *Rivers* hearing the court's determination must focus upon the patient's due process rights as guaranteed by the State Constitution and "be made in accordance with accepted professional judgment, practice and standards" (*Rivers v Katz, supra,* at 499).

Accordingly, we conclude that the appellant's mother was not a necessary party to the hearing. Therefore, the orders are affirmed, without costs or disbursements, and the stay of the administration of ECT contained in the decision and order of this Court dated January 8, 2001, is vacated forthwith.

ALTMAN, J. P., FLORIO, SCHMIDT and SMITH, JJ., concur.

Ordered that the orders are affirmed, without costs or disbursements, and the stay of the administration of electroconvulsive therapy contained in the decision and order of this Court dated January 8, 2001, is vacated forthwith.