OPINION OF THE COURT
Memorandum.
Ordered that the appeal from the order entered July 21, 2008 is dismissed; and it is further, ordered that the judgment is reversed without costs, the order dated July 21, 2008 is vacated, and the motion by defendant 481 Realty Corp. to, among other things, set aside the jury verdict is granted to the extent of ordering a new trial on the issues of apportionment of liability and damages.
The appeal from the order dated July 21, 2008 must be dismissed, as the right of direct appeal from an intermediate order terminates upon the entry of judgment (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the final judgment (see CPLR 5501 [a] [1]).
Plaintiff Saliha Bouima brought this action to recover for injuries she sustained on March 31, 1998 when she fell from an unsecured ladder in a unit of a building owned by defendant 481 Realty Corp. and leased to defendant Dacomi, Inc. Defendants Davy T’Hoen and Michael Coert were the principals of Dacomi. T’Hoen signed the lease for the unit on behalf of Dacomi. The lease went into effect on February 23, 1998. T’Hoen hired plaintiff to work in the leased premises as Dacomi’s receptionist and office manager, beginning March 1, 1998. T’Hoen offered, and Bouima agreed, that for $500 a month, which would be deducted from her salary, Bouima could also live in the leased premises. T’Hoen and Coert also resided in the premises.
Although the building was subject to a commercial certificate of occupancy, at the time of the lease to Dacomi, the leased *68 premises contained a full kitchen, a full bathroom with a shower, and an area that appeared to be a living room, as well as office space. With the knowledge and approval of 481 Realty, but without a building permit, the prior tenant had installed in the leased premises two built-in 12-foot-high structures that were each divided horizontally into two compartments. Plaintiffs bedroom consisted of the upper compartment of one of the structures, and was a small space which was provided to her furnished with a mattress, shelves and a light. The only means of ingress and egress to this area was through an opening in the wall that was 46 inches wide and 56V2 inches high; its sill was approximately eight feet above the floor of the premises, and it was only accessible by means of an unsecured straight wooden ladder which did not have rubber feet. Plaintiff moved in on March 1, 1998.
Almost immediately after she moved in, plaintiff began looking for a new job and a different abode. Plaintiff testified that during the month that she had lived in the leased premises, she complained to T’Hoen about the ladder, and that T’Hoen had replaced the original ladder with a second ladder which was also wooden, unsecured, and without rubber feet. The evidence indicated that the second ladder was missing a rung.
On March 31, 1998, having procured different accommodations, plaintiff was in the process of moving out of the premises. As she descended the ladder with items in one hand, the ladder moved and plaintiff fell. She dislocated her left ankle, broke and displaced her left fibula and the end part of her tibia, and suffered soft tissue injuries.
The only defendant that appeared and defended at trial was 481 Realty. Testifying for 481 Realty, Gary Krim, who managed the building, referred to the provision of the lease where under Dacomi, as tenant, represented that the leased premises would be used exclusively for nonmanufacturing commercial use and that it would not sublet the premises or any portion thereof. While admitting that the prior tenant of the premises had requested and received permission to erect the structure in which plaintiffs bedroom was located, for use as a sound studio, Krim denied ever having visited the premises for any purpose after the structure was erected, until after 481 Realty was sued by plaintiff, denied any knowledge of the kitchen in the premises or of the potential combined commercial and residential use of the premises, and denied having seen plaintiffs name on the mailbox for the premises.
*69 Robert Gruñes, a professional engineer, testified on behalf of plaintiff. His inspection of the premises in June 2005 disclosed conditions consistent with photographs of the premises taken at the time of the accident. The presence of a kitchen with sinks, cabinets, and a table, of a full bathroom, and of an apparent living room, as well as a work area, indicated to him that the premises were being used, at least in part, for residential purposes. Gruñes also inspected the structure in which plaintiffs bedroom had been located. He stated that this was a permanent structure made of sheetrock over lumber, affixed to the wall and containing two levels: one common with the floor of the apartment, and another elevated level that was accessible only by an unsecured ladder with wooden feet. He described the upper level as constituting a mezzanine floor within the meaning of New York City Building Code (Administrative Code of City of NY) § 27-232. Based on his inspection, Gruñes concluded that the fundamental reason for the accident was that the ladder was not secure, and that, regardless of the use of the premises, it constituted a significant structural or design defect to erect a floor that was only accessible by an unattached ladder.
Gruñes indicated that 481 Realty, as owner, was chargeable with knowledge of how the leased premises were used, especially since their partial residential use was obvious at the time when the prior tenant left, since a sketch of the alteration to the premises had been attached to Dacomi’s lease, and since plaintiffs name was on the doorbell. He stated that it is the owner’s obligation to assure compliance with the Building Code, and the safe maintenance of its buildings, citing Administrative Code § 27-128. Gruñes identified a number of provisions of the New York City Building Code which, he contended, 481 Realty had violated with respect to the premises. These included having allowed the prior tenant to erect a permanent structure without obtaining a permit, which permit he stated was required because the erection of the structure and the use thereof constituted a change in occupancy or use, citing Administrative Code §§ 27-113 and 27-118, and having permitted the erection of a mezzanine floor which did not have an “exit facility” or “access stairs,” citing Administrative Code §§ 27-232, 27-357 and 27-367. Moreover, Gruñes stated, because the erection of the structure created an additional floor, a permit was required, and 481 Realty, as the building owner, was the party responsible for obtaining an application for a permit, citing Administrative Code § 27-151.
*70 On appeal, 481 Realty contends that the action should have been dismissed against it because, as an out-of-possession landlord that had relinquished control of the premises and that had no obligation under the terms of the lease to maintain the premises, it was not liable for injuries that occurred on the premises. However, as the Appellate Division previously noted, because the lease contained a reservation of the owner’s right of entry, there existed a “triable issue of fact as to whether the alleged dangerous condition constituted a violation of Administrative Code of the City of New York § 27-357 and a significant structural or design defect” (Bouima v Dacomi, Inc., 36 AD3d 739, 740 [2007]). That decision was sufficiently broad so that proof of another violation of the Administrative Code, apart from section 27-357 and a significant structural design defect, could also support liability against 481 Realty.
Gruñes was properly qualified as an expert engineer with extensive knowledge of the Building Code (see Manning v Atlas Tr. Mix Corp., 254 AD2d 336 [1998]). His testimony adequately established the existence of a specific statutory violation and a significant structural or design defect to support the jury’s determination that 481 Realty was liable for plaintiffs injuries.
481 Realty’s further contention, that the Civil Court erred in charging the jury that 481 Realty could alternatively be held liable under a common-law theory of negligence, is without merit (see Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]; Kimen v False Alarm, Ltd., 69 AD3d 579 [2010]). Moreover, since plaintiff sufficiently established liability under all the theories charged, the lack of a special, as opposed to a general, verdict sheet does not require reversal (cf. Davis v Caldwell, 54 NY2d 176, 178 [1981]).
The evidence showed that immediately after moving into the premises, plaintiff undertook to find alternative lodgings, and was in the process of moving out just one month later when the accident at issue occurred. Except where a plaintiff voluntarily participates in an inherently dangerous activity, any assumption of risk is implied, and is subsumed within the comparative negligence statute (see CPLR 1411; see generally Vartabedian v Hospital for Special Surgery, 292 AD2d 520 [2002]; 79 NY Jur 2d, Negligence § 127). Here, where the Civil Court charged the jury with comparative fault, and the jury apportioned 2% fault to plaintiff, we do not find reversible error in the failure to charge the jury with respect to plaintiffs alleged assumption of risk.
*71 However, we conclude that in its apportionment of liability, the jury’s verdict was inconsistent with any fair interpretation of the evidence (see Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]). There was abundant evidence of T’Hoen’s partial responsibility for plaintiffs injuries, including the fact that after signing the commercial lease with 481 Realty on behalf of Dacomi, he offered to sublet living quarters to plaintiff at the premises in violation of the terms of the lease, and the fact that, after plaintiff complained about the ladder providing ingress to and egress from her sleeping area, T’Hoen was the individual who supplied the inadequate ladder from which plaintiff fell. However, the only indication whatsoever of Coert’s involvement in this matter was the mention at trial that he was a part owner of Dacomi. In this circumstance, the jury’s allocation of 9% liability to Coert and 0% liability to T’Hoen, while apportioning 80% liability to 481 Realty, among other apportionments, is inexplicable, and a new trial is required on the issue of comparative fault (see Covington v Kumar, 67 AD3d 463 [2009]; McGorry v Madison Sq. Garden Corp., 4 AD3d 264 [2004]). With respect to the damages portion of the trial, 481 Realty’s counsel argues that his cross-examination of plaintiffs expert, Dr. Toriello, was curtailed on Friday afternoon. However, as 481 Realty’s counsel had had an opportunity to cross-examine Dr. Toriello with respect to all the elements of damages to which Dr. Toriello had testified, the trial court’s determination to curtail Dr. Toriello’s cross-examination did not constitute an improvident exercise of the court’s discretion (see Matter of Simone D., 32 AD3d 931 [2006]; see generally 58A NY Jur 2d, Evidence and Witnesses §§ 663, 664).
The following Monday, 481 Realty’s counsel requested an adjournment of the trial because 481 Realty’s damages expert, a physician, would be unavailable to testify until Wednesday morning of that week due to scheduling difficulties. The trial court refused 481 Realty’s request for an adjournment. All testimony concluded Monday at midday.
In this circumstance, where the adjournment sought was relatively brief, the expert’s testimony was material, there is no indication in the record that the request for a continuance was made for the purpose of delay, and the trial court’s comments indicated that the liability portion of the trial had proceeded more quickly than might have been anticipated, the Civil Court improvidently exercised its discretion in denying 481 Realty’s application for a brief continuance of the trial on the issue of *72 damages (see Lila v Bata, 33 AD3d 875 [2006]; see also Notrica v North Hills Holding Co., LLC, 43 AD3d 1119 [2007]; Zysk v Bley, 24 AD3d 757 [2005]). Accordingly, the judgment is reversed, the order dated July 21, 2008 is vacated, and the motion by defendant 481 Realty to, among other things, set aside the jury verdict is granted to the extent of ordering a new trial on the issues of apportionment of liability and damages.
Steinhardt, J.E, Pesce and Rios, JJ., concur.