■ Margarita Muniz et al., Respondents, v Mount Sinai Hospital of Queens et al., Appellants. [937 NYS2d 244]—

Ordered that the order is modified, on the law, (1) by deleting the provision thereof granting that branch of the motion of the defendants Shishir Kumar Bose and Queens-Long Island Medical Group, P.C., which was for summary judgment dismissing, as time-barred, the first cause of action to recover damages for conscious pain and suffering based on medical malpractice insofar as asserted against them only to the extent that such cause of action is premised upon medical malpractice allegedly committed prior to March 2002, and substituting therefor a provision granting that branch of the motion to the extent that such cause of action is premised upon medical malpractice allegedly committed prior to June 15, 2003, (2) by deleting the provision thereof, in effect, denying that branch of the motion of the defendants Shishir Kumar Bose and Queens-Long Island Medical Group, P.C., which was for summary judgment dismissing the fourth cause of action to recover punitive damages insofar as asserted against them, and substituting therefor a provision granting that branch of the motion, (3) by deleting the provision thereof denying those branches of the separate motion of the defendant Mount Sinai Hospital of Queens which were for summary judgment dismissing the first and third causes of action insofar as asserted against it, and substituting therefor a provision granting those branches of the motion, and (4) by deleting the provision thereof denying that branch of the separate motion of the defendant Mount Sinai Hospital of Queens which was for summary judgment dismissing the fourth cause

of action to recover punitive damages insofar as asserted against it, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

The defendant Shishir Kumar Bose, an internist practicing with the defendant Queens-Long Island Medical Group, P.C. (hereinafter QLIMG), treated the plaintiff's decedent, Margarita Muniz (hereinafter the decedent), from 1985 until her death in 2004.

On February 22, 2002, the decedent sought treatment from Bose for an infection. Bose referred her for a blood test and advised her to follow up with him if her symptoms persisted. The decedent returned to him on February 27, 2002, with the same complaints. The results were not back from the blood test during this follow-up visit since the decedent had only gone for the blood test that morning. The decedent returned to Bose on March 20, 2002, at his request since the blood test results showed that the decedent was slightly anemic and Bose wanted to further evaluate the cause of the anemia. On March 2, 2004, the decedent again sought treatment from Bose, at which time Bose, among other things, ordered additional blood tests.

Subsequently, on March 30, 2004, the decedent, then 53 years old, was brought to the emergency department at the defendant Mount Sinai Hospital of Queens (hereinafter MSHQ) for evaluation of sudden onset, post-menopausal vaginal bleeding. Among other things, a blood test was taken and the decision was made to admit the decedent to MSHQ. The decedent remained hospitalized at MSHQ until she was discharged on April 9, 2004. Bose saw the decedent each day during her hospitalization at MSHQ except for one day. During her hospitalization, a pelvic sonogram revealed a mass in her lower abdomen, which was thought to be a possible leiomyosarcoma, or malignant tumor, for which a hysterectomy was performed. The surgery confirmed the presence of a leiomyosarcoma. The decedent was discharged from MSHQ on April 9, 2004.

Bose continued to treat the decedent from the date of her surgery through her re-hospitalization at MSHQ on May 19, 2004, for bilateral pulmonary congestion, interstitial congestion, and nodule changes. She remained at MSHQ until her death on June 6, 2004. During that period of hospitalization at MSHQ, the decedent was diagnosed with, inter alia, HIV/AIDS and PCP pneumonia, an illness that occurs primarily in patients at the end stage of untreated AIDS. At no time during the decedent's prior hospitalization in March/April 2004 did Bose consider a diagnosis of HIV or AIDS.

The decedent's daughter, Margarita Muniz, was appointed administrator of the decedent's estate on December 20, 2004, and, along with the decedent's three other daughters (hereinafter collectively the plaintiffs), commenced this action on or about December 15, 2005, against Bose, QLIMG, and MSHQ. In the amended complaint, the plaintiffs asserted causes of action to recover damages for conscious pain and suffering premised on medical malpractice against Bose and QLIMG (hereinafter together the QLIMG defendants) for treatment rendered to the decedent by them from June 3, 1985, to June 6, 2004, and against MSHQ for the treatment rendered from March 30, 2004, to June 6, 2004 (first cause of action); damages resulting from the defendants' failure to obtain informed consent from the decedent with respect to the procedures and treatments performed by the defendants in their care of her (second cause of action); damages stemming from the decedent's wrongful death (third cause of action); and punitive damages (fourth cause of action).

The QLIMG defendants moved, among other things, for summary judgment dismissing the complaint insofar as asserted against them. MSHQ separately moved for summary judgment dismissing the complaint insofar as asserted against it.

The Supreme Court, inter alia, granted that branch of the QLIMG defendants' motion which was for summary judgment dismissing, as time-barred, the first cause of action insofar as asserted against them only to the extent that such cause of action is premised on acts of medical malpractice occurring prior to March 2002. The Supreme Court held that "[t]he continuous treatment doctrine applies to toll the statute of limitations with respect to treatment occurring as far back as March 2002." Moreover, the Supreme Court held that "[q]uestions of fact exist, including but not limited to, whether Dr. Bose departed from the accepted standard of care during the period of treatment commencing in March 2002 by failing to test for immune system disease to determine the cause of abnormal blood levels that he documented in his own records, and if so whether said departure was a proximate cause of decedent's injuries and death which may require resolution at trial."

The Supreme Court granted that branch of the QLIMG defendants' motion which was for summary judgment dismissing the cause of action premised on a lack of informed consent insofar as asserted against them and denied MSHQ's motion for summary judgment dismissing the complaint insofar as asserted against it, concluding that triable issues of fact existed as to whether MSHQ departed from the accepted standard of care

and, if so, whether that departure was a proximate cause of the decedent's death.

The Supreme Court should have granted that branch of the QLIMG defendants' motion which was for summary judgment dismissing, as time-barred, the first cause of action to recover damages for conscious pain and suffering based on medical malpractice insofar as asserted against them to the extent that such cause of action is premised upon medical malpractice allegedly committed prior to June 15, 2003, which was more than 2½ years prior to the commencement of the instant action (*see* CPLR 214-a; *Cox v Kingsboro Med. Group*, 88 NY2d 904, 906 [1996]; *Stewart v Cohen*, 82 AD3d 874, 875 [2011]; *cf. Capece v Nash*, 70 AD3d 743, 745 [2010]). The plaintiffs, as the decedent's representatives, did not take advantage of CPLR 210 (a) by commencing the instant action within one year of the decedent's death (*cf.* CPLR 210 [a]). In opposition to the prima facie showing of the QLIMG defendants, the plaintiffs failed to raise a triable issue of fact as to the applicability of the continuous treatment doctrine sufficient to toll the statute of limitations (*see Capece v Nash*, 70 AD3d at 745; *see also Elrington v Staub*, 29 AD3d 939 [2006]; *Levinson v Etra*, 306 AD2d 250 [2003]).

The Supreme Court correctly denied those branches of the QLIMG defendants' motion which were for summary judgment dismissing, on the merits, the first and third causes of action insofar as asserted against them. "The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted community standards of practice, and evidence that such deviation or departure was a proximate cause of injury or damage" (*Castro v New York City Health & Hosps. Corp.*, 74 AD3d 1005, 1006 [2010]; *see Deutsch v Chaglassian*, 71 AD3d 718, 719 [2010]; *Geffner v North Shore Univ. Hosp.*, 57 AD3d 839, 842 [2008]). "On a motion for summary judgment, a defendant physician has the burden of establishing the absence of any deviation or departure, or that the patient was not injured thereby" (*Castro v New York City Health & Hosps. Corp.*, 74 AD3d at 1006; *see Stukas v Streiter*, 83 AD3d 18, 24 [2011]; *Deutsch v Chaglassian*, 71 AD3d at 719; *Rebozo v Wilen*, 41 AD3d 457, 458 [2007]). If a defendant establishes, prima facie, his or her entitlement to judgment as a matter law, then the plaintiff must submit evidentiary facts or materials to rebut the prima facie showing, so as to demonstrate the existence of a triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Stukas v Streiter*, 83 AD3d at 24; *Castro v New York City Health & Hosps. Corp.*, 74 AD3d at 1006; *Deutsch v Chaglassian*, 71 AD3d at 719). Here, the QLIMG defendants

established their entitlement to judgment as a matter of law by submitting, inter alia, their expert's affirmation, wherein the expert opined that those defendants did not deviate from accepted standards of medical practice in their treatment of the decedent. The expert also opined that the QLIMG defendants' care and treatment of the decedent were not proximate causes of the decedent's injuries (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Rebozo v Wilen*, 41 AD3d at 459). In opposition, the plaintiffs raised triable issues of fact through their expert's affidavit (*see McKenzie v Clarke*, 77 AD3d 637 [2010]; *Boutin v Bay Shore Family Health Ctr.*, 59 AD3d 368 [2009]; *Roca v Perel*, 51 AD3d 757, 759 [2008]).

The Supreme Court erred in denying those branches of MSHQ's motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against it. MSHQ established its entitlement to judgment as a matter of law by submitting, inter alia, its expert affirmation demonstrating that it could not be held vicariously or concurrently liable for medical malpractice since its emergency room personnel did not depart from good and accepted medical practice in their treatment of the decedent, and the decedent was under the care of a private physician who was not a MSHQ employee and whose conduct was not contraindicated by normal practice such that ordinary prudence required inquiry into its correctness (*see Toth v Bloshinsky*, 39 AD3d 848, 850 [2007]; *see also Schultz v Shreedhar*, 66 AD3d 666, 667 [2009]; *Cook v Reisner*, 295 AD2d 466, 467 [2002]). In opposition, the expert affirmation submitted by the plaintiffs was insufficient to raise a triable issue of fact as to whether MSHQ departed from good and accepted medical practice in treating the decedent and as to whether the alleged departures were proximate causes of the decedent's injuries (*see Alvarez v Prospect Hosp.*, 68 NY2d at 324; *Rosenman v Shrestha*, 48 AD3d 781, 784 [2008]; *Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 592 [2007]). Accordingly, the Supreme Court should have granted those branches of MSHQ's motion which were for summary judgment dismissing the first and third causes of action insofar as asserted against it.

MSHQ's contentions regarding the cause of action alleging lack of informed consent insofar as asserted against it are raised for the first time on appeal and, thus, are not properly before the Court (*see Coyle v Lefkowitz*, 89 AD3d 1054 [2011]; *Parker v Raymond Corp.*, 87 AD3d 1115, 1117 [2011]; *Whitehead v City of New York*, 79 AD3d 858, 861 [2010]).

MSHQ also did not specifically argue before the Supreme Court that the cause of action to recover punitive damages

insofar as asserted against it should be dismissed on the ground that New York does not recognize an independent cause of action for punitive damages. However, questions of law which appear on the face of the record and which could not have been avoided if raised at the proper juncture may be raised for the first time on appeal (*see Williams v Naylor*, 64 AD3d 588 [2009]; *Matter of 200 Cent. Ave., LLC v Board of Assessors*, 56 AD3d 679, 680 [2008]; *Block v Magee*, 146 AD2d 730, 732-733 [1989]), and such a question of law is presented here. "New York does not recognize an independent cause of action for punitive damages. Instead, '[a] demand or request for punitive damages is parasitic and possesses no viability absent its attachment to a substantive cause of action' " (*Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 80 [2007], quoting *Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603, 616 [1994]; *see Aronis v TLC Vision Ctrs., Inc.*, 49 AD3d 576, 577 [2008]; *Yong Wen Mo v Gee Ming Chan*, 17 AD3d 356, 359 [2005]). Accordingly, the Supreme Court should have granted that branch of MSHQ's motion which was for summary judgment dismissing the fourth cause of action to recover punitive damages insofar as asserted against it. For the same reason, the Supreme Court should have granted that branch of the QLIMG defendants' motion which was for summary judgment dismissing the fourth cause of action to recover punitive damages insofar as asserted against them.

The parties' remaining contentions are either not properly before this Court or without merit. Dillon, J.P., Dickerson, Hall and Austin, JJ., concur.