■ In the Matter of the Dissolution of SUNBURST ASSOCIATES, INC. MICHAEL VILARDI, Appellant; FRED BABBINO, Respondent. [941 NYS2d 289]—

Stein, J. Appeal from an order of the Supreme Court (Devine, J.), entered December 8, 2010 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to Business Corporation Law article 11, to direct the judicial dissolution of Sunburst Associates, Inc.

Sunburst Associates, Inc. is a closely held corporation created in 1995. Ownership of the corporation was originally divided evenly between petitioner and respondent, with each owning 10 shares of stock. Between 1995 and 2007, various transactions occurred wherein shares of stock were issued, voided and transferred between petitioner and respondent. Petitioner commenced this proceeding pursuant to Business Corporation Law § 1104, seeking dissolution of the corporation. In his answer and cross petition, respondent asserted various affirmative defenses, including that petitioner lacked standing. Supreme Court held a hearing to determine whether petitioner was, as he alleged, a 50% shareholder of Sunburst and, consequently, whether he had standing to bring the dissolution proceeding. After the hearing, Supreme Court found, without elaboration, that petitioner did not own any Sunburst stock and dismissed the petition. Petitioner now appeals.

In order to commence a dissolution proceeding pursuant to Business Corporation Law § 1104, a petitioner must hold shares

representing at least "one-half of the votes of all outstanding shares of [the] corporation" (Business Corporation Law § 1104 [a]). Thus, to establish standing, petitioner bore the burden of demonstrating ownership of at least one-half of the outstanding voting shares of Sunburst (*see Artigas v Renewal Arts Realty Corp.*, 22 AD3d 327, 328 [2005]; *Hunt v Hunt*, 222 AD2d 759, 760 [1995]).

The sole purpose of the hearing before Supreme Court was to determine whether petitioner was a 50% shareholder of Sunburst stock at the time of commencement of this proceeding. The testimony and documentary evidence adduced at the hearing demonstrated that, between 1996 and 2007, a number of transactions involving Sunburst stock occurred between the parties. The parties agreed that, as of July 2007, they each owned 10 shares of such stock. However, on July 30, 2007, they entered into an agreement pursuant to which stock certificate No. 5[1] was to be placed in escrow, purportedly to secure an unquantified and unidentified indebtedness by petitioner to respondent in relation to corporate activities. The escrow agreement provided that the execution and delivery of certificate No. 5 would not change petitioner's voting rights or status as an officer, director or shareholder of the corporation and that the corporation would continue to transact business as though petitioner still held such certificate.

Shortly thereafter, the parties signed a statement of corporate action in August 2007, stating that respondent was the sole shareholder of all shares of Sunburst stock as of July 30, 2007. This document further states that it was intended to "confirm to those with whom Sunburst . . . does business as to who the corporate officers are, and who has authority to act for and on behalf of [Sunburst]." The statement verified that respondent was the sole shareholder, officer and director of the corporation, with the sole authority to act on its behalf. It was signed by respondent in his capacity as the sole shareholder, director and officer of Sunburst, and petitioner signed it to affirm that the statements set forth therein were "true and accurate for Sunburst."

Petitioner contends that he was never indebted to respon-

---

1. This certificate, representing 10 shares of stock, was issued to petitioner in 2003 to replace a previously-issued certificate. The transfer section of certificate No. 5, transferring petitioner's shares to respondent, was signed by petitioner and was dated July 30, 2007.

dent,[2] that the August 2007 statement was merely a "facade" to secure financing from lending institutions, and that the July 2007 agreement, transfer of certificate No. 5 and August 2007 statement (hereinafter collectively referred to as the 2007 transfer documents) were never intended to actually transfer ownership of his corporate stock to respondent. At the hearing, petitioner proffered a variety of documents, including corporate income tax returns, to support this contention. Respondent relied on other evidence to support his assertion that petitioner's shares of Sunburst stock were validly transferred to him.

Initially, we reject respondent's argument that the August 2007 statement is conclusive evidence of his ownership of all of the Sunburst stock. Inasmuch as that document is not a contract, it does not invoke the parol evidence rule to preclude extrinsic evidence as to the parties' intent in regard to the implication of the 2007 transfer documents, individually and/or collectively (*see generally Friedman & Co. v Newman*, 255 NY 340, 343 [1931]; Prince, Richardson on Evidence § 11-101 *et seq.* [Farrell 11th ed]). Further, upon our review of the record, in view of the conflicting testimony and documentation presented by the parties—reflecting two completely divergent explanations of the facts—resolution of the issue of standing depends, in large part, upon credibility determinations. However, in its decision and order, Supreme Court simply indicated that it had "decided and found the essential facts which the [c]ourt deems established by the evidence," without any elaboration whatsoever as to what those facts were, what evidence it found determinative and what, if any, credibility determinations it made (*compare Matter of Pickwick Realty*, 246 AD2d 863, 865-866 [1998]; *Matter of Pappas v Corfian Enters. Ltd.*, 22 Misc 3d 1113[A], 2009 NY Slip Op 50109[U] [2009], *affd* 76 AD3d 679 [2010]). While we recognize that "this Court's authority 'is as broad as that of the trial court' and includes the power to 'render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses' " (*Matter of Pappas v Corfian Enters., Ltd.*, 76 AD3d 679, 679 [2010], quoting *Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]), where, as here, we are unable to discern the basis of Supreme Court's determination, intelligent appellate review is foreclosed. We, therefore, reverse the order and remit the matter to Supreme Court to make additional findings, after such further proceedings as it deems appropriate, and to render a new decision and order, accordingly.

---

**2.** Petitioner supports this contention by pointing to, among other things, the absence of a monetary amount in any of the relevant documents.

Mercure, A.P.J., Spain, Kavanagh and Egan Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.