■ In the Matter of KNICKERBOCKER FIELD CLUB, Appellant, v. SITE SELECTION BOARD OF THE CITY OF NEW YORK et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR (1) to review determinations of respondent Site Selection Board of the City of New York, made on October 18, 1971, and approved by respondent Mayor of the City of New York on November 29, 1971, and (2) for related relief, petitioner appeals from a judgment of the Supreme Court, Kings County, dated April 25, 1972, which granted separate motions by respondents to dismiss the petition on the ground of legal insufficiency. Judgment reversed, on the law, with one bill of costs

jointly against respondents appearing separately and filing separate briefs; respondents' motions denied; and Resolution No. 9, adopted by respondent Site Selection Board, annulled. On October 18, 1971, in accordance with a request by the New York City Transit Authority, after holding requisite public hearings, the Site Selection Board of the City of New York adopted Resolution No. 9 designating petitioner's property as the site for a forthcoming power substation proposed to be constructed in the Albemarle Road area of Brooklyn to service the BMT subway line, by an alleged majority vote. Thereafter, as is required by law in order that such resolution be given effect, the Mayor of the City of New York approved the resolution on November 29, 1971 (New York City Charter, § 227, subd. b) and he further directed that proceedings be instituted to acquire the property in accordance with law. Objecting to such proceedings and designation by the Site Selection Board, petitioner instituted the instant proceeding alleging in its petition merely that there were alternate sites under consideration for the proposed construction which would not require condemnation of improved property, would cost the municipality less and would be more advantageous, and that the failure of the board to approve an alternate site constituted an arbitrary and capricious exercise of the board's power. Respondents moved to dismiss the complaint for legal insufficiency. Special Term considered the petition not only in the light of an article 78 proceeding, but also as a complaint seeking a declaratory judgment. Thereafter, Special Term dismissed the petition for failure to state a cause of action. Upon this appeal, petitioner argued the question of the sufficiency of its complaint and, in addition, raised for the first time the argument as to whether the Site Selection Board was properly composed at the October 18, 1971 meeting and whether the action it took that day in adopting the resolution in question was legal. We think we may take cognizance of this argument, even though it was not expressly propounded before the Special Term or alleged in the petition. The entire transcript of the minutes of the Site Selection Board's meeting of October 18, 1971 was presented to the Special Term. A motion to dismiss a proceeding, pursuant to CPLR 3211 (subd. [a]) may be treated as one for summary judgment (CPLR 3211, subd. [c]). When such treatment is given to such a motion, the court is not bound in its review to the specific pleading in question, but rather may search the record and consider all that is before it (*Smith* v. *Helbraun*, 21 A D 2d 830; *Schoonmaker* v. *Schoonmaker*, 21 A D 2d 777). Special Term could have considered the underlying issue of whether the board was properly constituted at the October 18, 1971 meeting as a threshhold question to be reached prior to determining the validity of the board's action. This court may now, on appeal, grant the judgment which Special Term could or should have granted (*B. L. W. Realty Holding Co.* v. *Socony Mobil Oil Co.*, 32 A D 2d 312, 315, affd. 26 N Y 2d 1002). Furthermore, upon appeal, as argument that the ruling at Special Term was incorrect, we think appellant has a right to urge a proposition of law which appeared upon the face of the record and which could not have been avoided by respondents if brought to their attention at the proper juncture and that such a decisive argument should not be lost because of the error of petitioner's counsel in not raising it earlier (see *Persky* v. *Bank of Amer. Nat. Assn.*, 261 N. Y. 212, 218, 219). Converting the motion to dismiss to one for summary judgment upon this appeal does not offend our decision in *Mareno* v. *Kibbe* (32 A D 2d 825). Respondents were informed of appellant's intention to argue the question of the propriety of the board's composition in appellant's brief and were further given the opportunity to raise arguments against this contention in a supplemental respondents' brief requested of them by this court which was to deal specifically with this issue. Sufficient notice

of the court's intention having been given the parties, our decision herein does not fly in the face of our prior ruling. Subdivision a of section 227 of the New York City Charter prescribes that members of the Site Selection Board "shall be the director of city planning, the director of the budget, the administrator of municipal service, the comptroller and, with respect to a capital project located wholly or partly within a borough, the president * * * of the borough * * * in which the site is located." None of the five designated officials actually attended the meeting of the board on October 18, 1971. Instead, each sent a representative. The specific title of each representative is not set forth in the minutes of the board's meeting, with the exception of the Assistant Director of the Bureau of the Budget, who was the chairman of the meeting. Of the five officers comprising the Site Selection Board only three — the Borough President, the Comptroller and the Administrator of Municipal Service are provided with specific authority to appoint deputies who may possess their powers, exercise their judgment and cast their votes at Site Selection Board meetings (New York City Charter, §§ 82, 94, 1601). In the chapters of the charter dealing with the other two — the Bureau of the Budget and the Department of City Planning — the appointment of deputies is not precisely dealt with either in general or in connection with the Site Selection Board. In an oblique way several sections of the City Charter contemplate that the Director of the Budget may act personally or through a representative (vide § 111; also § 115). Similarly with respect to the Department of City Planning, subdivision b of section 192 provides that a vice-chairman of the City Planning Commission, appointed by the Mayor, shall serve as Director of City Planning in the absence of the chairman. Standing by themselves it is doubtful that these sections would authorize substitutions on the Site Selection Board. However, the municipal respondents rely additionally on subdivision a of section 1101 of the charter to justify that substitution. In relevant part that reads as follows: "Any head of a department * * * may by instrument in writing filed in the department designate any deputy to possess any of his powers and exercise such of his duties * * * as he may specify" (italics supplied). We may assume that the Department of City Planning and the Bureau of the Budget are departments within the meaning of subdivision a of section 1101, although only the former has the word "department" in its title. As to the other three members of the Site Selection Board, subdivisions 1 and 5 of section 82, when read together, grant power to a Borough President to appoint a deputy to sit on the Site Selection Board; section 94 gives a similar power to the Comptroller without, however, mentioning the Site Selection Board in so many words; section 1601 authorizes the Mayor to appoint deputy administrators of Municipal Service and the Administrator to appoint assistant administrators. This distinction may be important, since it is usually a deputy who takes the place of his principal, rather than an assistant (Matter of Klipp v. New York State Civ. Serv. Comm., 42 Misc 2d 35, affd. 22 A D 2d 854, affd. 15 N Y 2d 880). However, the significance is lost here, because the record is barren as to who represented whom at the meeting or as to the source of the authority to be present, except as to Mr. Zandalasini, who, as noted above, was an assistant rather than a deputy of the Director of the Budget. As to the others, we only learn from petitioner's brief that Mr. Carroll sat in place of the Comptroller, that Mr. Zuccotti represented the City Planning Commission, that Mr. Duchan represented the Administrator of Municipal Service and that Mr. Vaccarella was acting for the Borough President of Brooklyn. Assuming, arguendo, that among the various specific grants of authority and the general grant cited above there existed sufficient authority to designate substitutes, the fact that the city has

not come forward with proof that the mandated proper designations in writing were filed with the appropriate boards, even after having been specifically requested by this court to do so, justifies us in concluding that it cannot. We cannot let a presumption of regularity stand in the face of this demonstrated deficiency. Therefore, the determinations must be annulled. Hopkins, Acting P. J., Munder, Martuscello and Gulotta, JJ., concur; Benjamin, J., dissents and votes to affirm, with the following memorandum: While I do not approve of the practice of having subordinate city officials exercise the vast discretionary powers properly vested in their superiors, with respect to the important function of selecting sites for public facilities, in this case I see no legal basis or sound reason for disturbing the determination of the Site Selection Board. The site selection here attacked was adopted by a three to two vote of the board. Voting for it were the representatives of the Comptroller, the Administrator of Municipal Service, and the Budget Director; voting against it were the representatives of the Director of City Planning and the Borough President. The Borough President, Comptroller and Administrator of Municipal Service are specifically empowered to appoint "deputies" who may act for them at meetings of the Site Selection Board (New York City Charter, §§ 82, 94, 1601). Subdivision a of section 1101 of the charter similarly confers such power on all heads of city departments; and the Bureau of the Budget and the Department of City Planning would seem to be "departments" within the intent of that section of the charter. At the meeting at which the subject site was selected, the Budget Director was represented by George A. Zandalasini, the Assistant Director of the Budget. True, he did not have the specific title of "deputy", but that is not conclusive on the question whether he was an official to whom the Budget Director could delegate his authority to act at meetings of the Site Selection Board, pursuant to the general power of delegation of authority to "deputies" contained in subdivision a of section 1101 of the Charter. In my opinion, he was a high-ranking officer to whom such authority could be delegated, and the use of the word "deputies" in that section is not controlling (see Matter of Byrnes v. Windels, 265 N. Y. 403, 407–410, which construed a statute using the word "deputy" as including an assistant corporation counsel who was authorized to act for the Corporation Counsel)[1]. It is also true that section 1101 requires that a written designation, showing such delegation of authority, be filed in the office of the department, and this record contains no precise proof that a designation of Zandalasini was filed in the office of the Budget Director. But the minutes of the Site Selection Board meeting, immediately preceding the meeting at which the subject site was selected, contain a memorandum from the Budget Director designating Zandalasini to act for him at meetings of that board; and the presumption of regularity of official acts supports an inference that the Budget Director had complied with the aforesaid technical requirement of section 1101 by filing a written designation of Zandalasini in his own office, as well as with the Site Planning Board, and there is here no proof to the contrary. It should also be noted that for a long time prior to the selection of the site here under attack, meetings of the Site Selection Board had been conducted by representatives of the various city department heads constituting its membership, without any attack having ever been made on the authority of those representatives

---

1. If section 1101 were construed as not authorizing the delegation of authority to high-ranking officials unless they bore the title of "deputy", many city departments would not have deputy heads and would be unable to act if their heads became ill or left town, or for other reasons were unable to attend all the meetings of the various boards of which they were members.

to act for their superiors. And this long-standing, practical construction of the laws permitting the delegation of such power, by those charged with the function of site selection, is entitled to great consideration by the courts. For these reasons I conclude that Zandalasini, the Assistant Director of the Budget, was authorized to act for the Budget Director in the selection of the subject site, and his vote, together with those of the representatives of the Comptroller and the Administrator of Municipal Service, made up the required majority for its selection. Apart from the foregoing, there are other reasons why this site selection should not be invalidated by us. First: The failure to raise an issue at Special Term generally requires that it not be considered on appeal (Persky v. Bank of Amer. Nat. Assn., 261 N. Y. 212, 217–218; 10 Carmody-Wait, 2d, N. Y. Prac., §§ 70.300, 70.414). In this case, the only issues raised by petitioner at Special Term were that the site selection was arbitrary, discriminatory and made in bad faith, and it in no way contended that the board was illegally constituted. Not until this appeal was taken was that last issue raised, and now it is too late.[2] Second: Equitable considerations require that we not now consider the issue of allegedly illegal composition of the board. The construction of this much-needed power substation has already been delayed for two years. If the alleged flaw in the composition of the board had been raised when the site was selected (in October, 1971) or when this proceeding was commenced (in January, 1972), and the site selection had then been invalidated on that ground, the city could have promptly cured that defect by reconvening the board for readoption of this site, and the substation could then have been built and placed in service. Because of petitioner's delay in raising this issue, it would be unfair for us to consider it, and in my view petitioner should be equitably estopped from now raising it for the first time. Third: Invalidation of this site selection on the ground that the board was illegally constituted may open a Pandora's box. Innumerable prior condemnations have been based on site selections made by boards constituted like the one here attacked; and a veritable flood of attacks on those prior condemnations, and their invalidation, with resultant unsettling of titles and harm to innocent parties, may well result from the majority's holding in this case. Such result can be and should be avoided by sustaining the site selection in this case (cf. Matter of Stupack, 274 N. Y. 198).

2. There is authority to the effect that a new " argument " may be urged on appeal, but those holdings do not apply to a new " question " or " issue "; and here it is a new " issue " that petitioner seeks to raise for the first time on this appeal.