■ ALESSANDRA BEVINETTO, Respondent, v STEVEN PLOTNICK, M.D., P.C., et al., Appellants. [857 NYS2d 694]—

In an action to recover damages for medical malpractice, wrongful death, and lack of informed consent, the defendants appeal from an order of the Supreme Court, Nassau County (Brandveen, J.), dated March 26, 2007, which denied their motion pursuant to CPLR 3216 to dismiss the complaint for failure to prosecute or, alternatively, for summary judgment dismissing the first and third causes of action as time-barred.

Ordered that the appeal from so much of the order as denied that branch of the motion which was pursuant to CPLR 3216 to dismiss the complaint for failure to prosecute is dismissed as academic in light of our determination; and it is further,

Ordered that the order is reversed insofar as reviewed, on the law, with costs, that branch of the motion which was for summary judgment is granted, and the complaint is dismissed in its entirety.

The defendant Steven Plotnick (hereinafter the defendant) rendered medical treatment to the plaintiff's decedent from January 26, 1993 through May 25, 1993. On April 28, 1993 the defendant performed a surgical procedure on the decedent at Winthrop University Hospital, at which time the decedent signed a consent form evidencing her consent to several surgical procedures, including, inter alia, a bilateral oophorectomy. It is undisputed that the defendant last treated the plaintiff's decedent on May 25, 1993 when she presented for a post-surgical consult.

During the subsequent four-year period, the decedent was under the care of two other gynecologists. In August 1997 the decedent was admitted to Mercy Medical Center (hereinafter Mercy) with abdominal pain. A CT scan revealed a large ovarian mass. Mercy referred the decedent to Memorial Sloan-Kettering Cancer Center (hereinafter MSKCC). Upon her release from Mercy, the decedent, who thought that the defendant had removed both her ovaries in 1993, ordered a copy of her medical records from him. Those records included an operative report indicating that when the defendant performed the oophorectomy, a small portion of the decedent's right ovary that was adherent to the right pelvic sidewall was not removed.

The decedent was diagnosed with ovarian cancer and on September 2, 1997 she underwent surgery at MSKCC. The decedent died on January 25, 2002.

On December 9, 2003 the plaintiff commenced this action on behalf of the decedent's estate alleging medical malpractice, wrongful death, and lack of informed consent. The defendants moved, inter alia, for summary judgment dismissing the first and third causes of action to recover damages for medical malpractice and lack of informed consent, respectively, as time-barred. In support of that branch of the motion, the defendants demonstrated that the action was commenced well after the 2½-year limitations period had run (see CPLR 214-a; see generally Scott v Uljanov, 74 NY2d 673, 674 [1989]; Lippert v Yambo, 267 AD2d 433, 434 [1999]; Hazel v Montefiore Med. Ctr., 243 AD2d 344, 344-345 [1997]; Spinosa v Weinstein, 168 AD2d 32, 41 [1991]; Hodaba v Lippert, 64 AD2d 691 [1978]). The plaintiff contends that she is entitled to the benefit of an estoppel preventing the defendants from relying on the applicable statute of limitations (see CPLR 214-a) to obtain the dismissal of the first and third causes of action. The plaintiff further contends that the defendant fraudulently concealed from the decedent the fact that he had not fully removed both her ovaries, thereby placing her at risk of developing ovarian cancer.

The plaintiff failed to make the requisite showing that she brought the action "within a reasonable time after the facts giving rise to the estoppel . . . ceased to be operational" (Simcuski v Saeli, 44 NY2d 442, 450 [1978]). The statute of limitations began to run when she became aware of the fact that the defendant, during the 1993 surgical procedure, did not fully remove both ovaries. Nonetheless, the plaintiff waited more than six years thereafter before commencing this action.

Equitable estoppel will "bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing . . . which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding" (Zumpano v Quinn, 6 NY3d 666, 673 [2006] [internal quotation marks and citations omitted; emphasis added]). Here, given the decedent's awareness of her condition and the basis for this action within the applicable limitations period, the subsequent inaction in timely commencing the lawsuit precludes the equitable estoppel claim (see Putter v North Shore Univ. Hosp., 7 NY3d 548 [2006]; Roswick v Mount Sinai Med. Ctr., 22 AD3d 409 [2005]; Julian v Carroll, 270 AD2d 457 [2000]; Campbell v Chabot, 189 AD2d 746 [1993]).

Moreover, the plaintiff's submissions negated, as a matter of

law, "an essential element of equitable estoppel, i.e., justifiable reliance upon the [defendant's] intentional misrepresentations which prevented her from discovering the malpractice or induced her to refrain from bringing suit" (*McIvor v Di Benedetto*, 121 AD2d 519, 523 [1986]; *see Simcuski v Saeli*, 44 NY2d 442, 449 [1978]). Contrary to the plaintiff's contention, there was no basis to forestall the commencement of this action pending the completion of an investigation of the defendant by the New York State Department of Health, State Board for Professional Misconduct, which began in or about November 2002, involving, inter alia, the allegations made by the decedent regarding the defendant's alleged misconduct.

In addition, contrary to the plaintiff's contention, the issue of whether the second cause of action to recover damages for wrongful death should be dismissed is properly before us (*see Matter of Besedina v New York City Tr. Auth.*, 47 AD3d 924 [2008]; *Glasheen v Long Is. Diagnostic Imaging*, 303 AD2d 365 [2003]; *Block v Magee*, 146 AD2d 730, 732-733 [1989]; *Matter of Knickerbocker Field Club v Site Selection Bd. of City of N.Y.*, 41 AD2d 539, 540 [1973]). Although the action was commenced within the two-year limitations period provided for a wrongful death cause of action, which runs from the death of a decedent (*see* EPTL 5-4.1; *Burwell v Yonkers Gen. Hosp.*, 6 AD3d 478, 480 [2004]), that cause of action also should have been dismissed. Where as here, the statute of limitations on the underlying medical malpractice action had run during the decedent's lifetime, the wrongful death claim must be dismissed (*see Helgans v Plurad*, 255 AD2d 554, 557 [1998]; *see also Prink v Rockefeller Ctr.*, 48 NY2d 309, 315-316 [1979]).

The parties' remaining contentions regarding that branch of the defendants' motion which was to dismiss the complaint pursuant to CPLR 3216 have been rendered academic in light of our determination. Skelos, J.P., Lifson, Santucci and Balkin, JJ., concur.