Picchioni v Sabur (2024 NY Slip Op 04362)

Picchioni v Sabur

2024 NY Slip Op 04362

Decided on September 05, 2024

Appellate Division, First Department

ROSADO, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 05, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter H. Moulton
Manuel Mendez LlinÉt M. Rosado Kelly O'Neill Levy

Index No. 21790/14 Appeal No. 2325 Case No. 2023-02240 

[*1]Sherry Picchioni, as Administratrix of the Estate of Roderick Picchioni, deceased, etc., Plaintiff-Respondent-Appellant,
v
Rumana Sabur et al., Defendants, Mahire Ozcan, Defendant-Respondent, Nejat Kiyici et al., Defendants-Appellants.

Certain defendants appeal and plaintiff cross-appeals from an order of the Supreme Court, Bronx County (Michael A. Frischman, J.), entered on or about April 11, 2023, which, insofar as appealed from as limited by the briefs, denied defendants Drs. Nejat Kiyici and Michael Ader's separate motions for summary judgment dismissing the medical malpractice claim against them, granted defendant Mahire Ozcan's motion to renew her prior motion to dismiss the wrongful death claim against her and, upon renewal, granted the motion and denied plaintiff's cross-motion insofar as it sought to deem that claim timely.

Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Nicholas Tam, Christopher Simone and Lena Holubnyczyj of counsel), for Nejat Kiyici, appellant.
Yoeli Gottlieb & Etra LLP, New York (Ryne A. Duchmann and Matthew E. Yoeli of counsel), for Michael Ader, appellant.
Silberstein Awad & Miklos, P.C., Garden City (Michael D. Schultz of counsel), for respondent-appellant.
Heidell, Pittoni, Murphy & Bach, LLP, New York (Alejandra Gila and Daniel S. Ratner of counsel), for respondent.

ROSADO, J. 

In this medical malpractice action, defendants Drs. Nejat Kiyici and Michael Ader separately appeal from the Supreme Court's denial of their motions for summary judgment. Plaintiff also appeals from the same order insofar as it granted Dr. Mahire Ozcan's motion to renew her prior motion to dismiss, and upon renewal granted the motion and dismissed the complaint against her.
On October 29, 2011, plaintiff's decedent, 58-year-old Roderick Picchioni, presented to Montefiore Medical Center complaining of acute epigastric pain. Upon admission, two doctors at the hospital suggested that the decedent could be suffering from mesenteric ischemia, a condition in which blood flow to the intestine is decreased or blocked. On that date, the decedent underwent a computed tomography angiography (CTA), which revealed the presence of splenic infarcts, tissue death due to restricted blood flow to the spleen. Notably, the CTA did not reveal bowel wall thickening, ascites, or free air, nor was there evidence of pneumatosis.
On October 30, 2011, decedent was examined by Dr. Ader, a gastroenterologist. During the examination it was noted that decedent had been experiencing pain in his abdomen and chest. Dr. Ader referred decedent to the surgical department to address his splenic infarcts and ordered him to undergo an esophagogastroduodenoscopy (EGD) to rule out the recurrence of peptic ulcer disease. Dr. Kiyici testified that an EGD is used to evaluate patients for bleeding, gastritis, hernias, and ulcers, but does not evaluate the vasculature, and thus could not be used to diagnose mesenteric ischemia. The following day, Dr. Kiyici conducted the EGD as ordered by Dr. Ader to determine whether his pain was caused by a reoccurrence of his peptic ulcer disease. No ulcers were found, and Dr. Kiyici noted that decedent was experiencing bile gastritis. Neither Dr. Ader nor Dr. [*2]Kiyici met with or treated decedent again.
On November 3, 2011, a transesophageal echocardiogram (TEE) was performed to rule out a cardiac source for embolism. No clots were seen, but the presence of a patent foramen ovale (PFO) (a hole between the left and right atria of the heart) was noted. Dr. Ozcan, a hospitalist at Montefiore at the time of decedent's admission who cared for him from November 1, 2011, until November 4, 2011, testified that her understanding was that the PFO was the most likely cause of decedent 's splenic infarcts.
Decedent was discharged from Montefiore on November 4, 2011, with instructions to take aspirin daily and follow up with various doctors after his release.
Decedent re-presented to Montefiore two days later, again complaining of acute epigastric pain. A CT scan with oral contrast performed on November 7, 2011, noted small bowel pneumatosis and mesenteric venous gas and was "highly suspicious for ischemic bowel." Upon diagnosis of necrotic bowel ischemia, the decedent underwent a bowel resection. Defendant Dr. Prakaschandra Rao performed surgery that day, during which he discovered and resected a gangrenous bowel. A vascular surgeon who was called in found and removed a clot from the superior mesenteric artery. An ultrasound performed that same day revealed deep vein thrombosis in the left popliteal and posterior tibialis veins. After surgery, decedent went into septic shock and suffered multiple organ failure, and died on December 6, 2011, less than one month later. The autopsy report lists the cause of death as "[g]angrenous bowel with subsequent development of sepsis and multiorgan failure in a 58-year-old man with deep vein thrombosis due to his morbid obesity, which [was] complicated by embolism as well as paradoxical thromboembolism via PFO to the superior mesenteric as well as other major arteries."
Drs. Ader and Kiyici maintain that the treatment they rendered was in accord with the standard of care. They assert that the results of the CTA were negative for mesenteric ischemia, absolving them of liability.
On this record, plaintiff sufficiently raises numerous issues of fact warranting a trial, including, among other things: whether given the presence of mesenteric ischemia as well as the advanced stage of bowel necrosis upon decedent's second admission to Montefiore, defendants can plausibly argue that both conditions could have developed in the short window between their examinations and testing of decedent, and his readmission to the hospital on November 6, 2011; whether they deviated from the standard of care in relying upon the results of the CTA alone to preclude mesenteric ischemia given decedent 's presentation of acute pain disproportionate to his physical examinations, and presence of splenic infarcts; whether they deviated from the standard of care in failing to order further workup or investigation into the etiology of decedent's abdomen and chest pain upon ruling out their diagnosis [*3]of peptic ulcer disease; whether they deviated from the standard of care in attributing the acute abdominal and chest pain experienced by decedent to the likelihood that he was suffering from bile reflux, and failing to order additional investigation or testing to confirm the diagnosis; and whether they deviated from the standard of care in failing to order further workup or investigation into the etiology of decedent's splenic infarcts.
We now modify to reinstate the claims against Dr. Ozcan, and otherwise affirm.
Background
Plaintiff commenced this wrongful death action against a number of defendants, including Drs. Ozcan, Ader and Kiyici on December 2, 2013 (First Action). Later, plaintiff realized that she had inadvertently failed to serve Dr. Ozcan, and she accordingly commenced a second action against Dr. Ozcan (Second Action) on April 23, 2014. Plaintiff moved to consolidate the First Action and the Second Action and to deem the wrongful death claim against Dr. Ozcan timely by operation of the relation-back doctrine. The motion court consolidated the actions. Dr. Ozcan moved to dismiss plaintiff's wrongful death claims as untimely under EPTL 5-4.1; however, the motion court never decided Dr. Ozcan's motion.
Following completion of discovery, Dr. Ader moved for summary judgment, relying on an affirmation from Dr. Satish Nagula, M.D., a board-certified gastroenterologist, and an affirmation from Dr. Lawrence Schwartz, a board-certified radiologist. Drs. Nagula and Schwartz opined, among other things, that there was no radiographic evidence of mesenteric or other intra-abdominal ischemia captured by the CTA during decedent's initial admission.
Dr. Kiyici moved for summary judgment, relying on the affirmation of Dr. Maxwell Chait, a board-certified internist and gastroenterologist. Dr. Chait opined that Dr. Kiyici, whose role was limited to the performance of an EGD, appropriately relied on the formal interpretation of the CTA to rule out mesenteric ischemia, and that
Dr. Kiyici's treatment of decedent during his initial admission was "appropriate, timely and did not depart from the reasonable accepted standards of medical practice."
Dr. Ozcan moved for summary judgment, asserting that the wrongful death claim was untimely commenced against her. As relevant here, Dr. Ozcan renewed her argument in connection with her prior motion to dismiss.
Plaintiff opposed, relying on the affirmations of an expert general surgeon and an expert internist. Plaintiff asserted that defendants failed to meet their prima facie burden as none of their experts addressed decedent's splenic infarcts and the embolic risk they presented, nor did they explain his epigastric pain disproportionate to his physical exam. Plaintiff argued, in any event, that she sufficiently raised issues of fact warranting denial of summary judgment.
Plaintiff's expert internist explained that the presence of splenic infarcts, together with the posited diagnosis of mesenteric [*4]ischemia, required further testing beyond what was conducted by defendants. The internist further asserted that an MRA (magnetic resonance angiography) was the "gold standard" for detection, as the contrast dye used in a CTA can obscure the mesenteric vessels. Plaintiff's expert surgeon, an elected Fellow of the America College of Gastroenterology, opined that additional testing via an MRA would have revealed a clot or embolus in the superior mesenteric artery, observing that the autopsy report, which was not addressed by defense experts, furnished "persuasive evidence that the superior mesenteric artery was occluded" at or around the time the splenic infarcts were present. He further opined that intestinal ischemia was well within the purview of a consulting gastroenterologist, and that Drs. Adler and Kiyici were required to offer recommendations regarding further abdominal work-up. He opined that given decedent's presentation and the finding of splenic infarcts, the failure to order alternative vascular testing of decedent constituted a departure.[FN1] Plaintiff's expert explained that abdominal pain out of proportion to physical examination, such as that exhibited by decedent during the first admission, was a "classic presenting sign" of mesenteric ischemia.
In reply, Drs. Ader and Kiyici argued that there was no evidence that mesenteric ischemia could or should have been diagnosed during decedent's initial admission. Drs. Ader and Kiyic do not comment on plaintiff internist's assertion that a CTA scan could obscure the mesenteric vessels with the dye used in the imaging. Drs. Ader and Kiyici likewise remain silent on the question of whether intestinal ischemia was generally within the purview of a consulting gastroenterologist.
Following oral argument, Supreme Court granted Dr. Ozcan's motion and denied Drs. Ader and Kiyici's motions. The court found that while Drs. Ader and Kiyici met their prima facie burdens, plaintiff sufficiently raised issues of fact as to whether they had failed to timely diagnose decedent's condition by opining that defendants departed from the standard of care in failing to order "other imaging modality that specifically examines the mesenteric vessels and arteries."
Finally, the court found that the wrongful death claim was untimely asserted as against Dr. Ozcan, noting that it was unclear whether she was notified of the commencement of the First Action, and it was undisputed that she was never timely served within the limitations period.
Discussion
Medical Malpractice against Drs. Ader and Kiyici
In a medical malpractice action, a defendant "establishes prima facie entitlement to summary judgment by showing that in treating the plaintiff, he or she did not depart from good and accepted medical practice, or that such departure was not a proximate cause of the plaintiff's alleged injuries" (Anyie B. v Bronx Lebanon Hosp., 128 AD3d 1, 3 [1st Dept 2015]), whereupon the burden shifts to the plaintiff to present evidence [*5]in admissible form to demonstrate the existence of a triable issue of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]).
Drs. Ader and Kiyici have not met their burden insofar as: (i) none of their experts opine that Drs. Ader and Kiyici did not deviate from the standard of care by ruling out mesenteric ischemia solely based on the day-old CTA imaging results; (ii) none of their experts explain why it might have been appropriate for Drs. Ader and Kiyici to end their inquiry into the etiology of decedent 's symptoms once their original diagnosis of peptic ulcer disease was ruled out, particularly in light of decedent 's acute pain which was disproportionate to the physical examination conducted, combined with the existence of splenic infarcts; (iii) none of their experts testified as to whether Drs. Ader and Kiyici met the standard of care in addressing decedent 's splenic infarcts by merely referring decedent to the surgical and hematology department, or whether more investigation and inquiry was necessary, and; (iv) Drs. Ader and Kiyici do not provide testimony or expert testimony discussing whether the onset of mesenteric ischemia and the advanced stage of bowel necrosis present upon decedent's second admission to Montefiore could have developed in the short window between their examinations and testing of decedent, and his readmission to the hospital on November 6, 2011.
Plaintiff, in any event, sufficiently raises triable issues of fact precluding summary judgment. Plaintiff's experts raised triable issues as to whether Drs. Ader and Kiyici departed from the standard of care by failing to recommend additional testing or examination or decedent (including but not limited to alternative vascular imaging such as an MRA) when, as noted, their differential diagnosis of peptic ulcer disease had been ruled out. Further, the record is silent as to whether the presence of splenic infarcts in conjunction with the acute pain experienced by decedent could have been attributed to bile reflux, and if not, if it was a departure from the standard of care not to conduct additional inquiry and investigation into decedent's symptoms.
Plaintiff's experts raise an issue of fact as to whether CTA imaging alone was enough to rule out the presence of mesenteric ischemia. At the very least, both doctors had a duty to recommend further workup to exclude mesenteric ischemia as a diagnosis or to inquire into the etiology of decedent's symptoms—a duty defendant doctors do not seriously dispute. The record reflects that defendant doctors postponed workup of "splenic infarct, etiology unclear," even though the latter was consistent with a diagnosis of mesenteric ischemia.
Plaintiff's expert surgeon explained that because splenic infarcts were present during decedent's first admission, "at least a partial occlusion of the superior mesenteric artery existed at that time as well," directly refuting Dr. Ader's contention that clots did not exist at the time [*6]he treated decedent. The findings of the autopsy report indicated that paradoxical emboli traveled through decedent's PFO showing; according to plaintiff's experts, the same embolic source that caused decedent's splenic infarcts also caused his mesenteric clots, undermining the conclusions of defendants' experts and at the very least calling into question their conclusion that mesenteric ischemia was not present during decedent's first hospital admission (see Rong Lan Lin v Wong, 202 AD3d 406, 407 [1st Dept 2022] [pathology report's finding of necrotic placental tissue during D&C performed two weeks after delivery "was relied upon not for hindsight evaluation, but rather for the inference that placental tissue remained in plaintiff's uterus," which, combined with the plaintiff's expert's opinions, raised questions of fact]).
It should be noted that this is not the typical failure to diagnose case where physicians maintain that the patient did not present with symptoms consistent with the ultimate diagnosis and the record contained no evidence suggesting the diagnosis (compare Perez v Riverdale Family Med. Practice, P.C., 177 AD3d 554, 555 [1st Dept 2019] ["decedent did not exhibit the classic symptoms of aortic dissection to warrant further investigation"]). Defendants' entire defense rests upon two arguments: (i) that the results of the CTA alone definitively ruled out mesenteric ischemia; and (ii) that the CTA imaging is all the testing required to rule out the existence of mesenteric ischemia. Therefore, Drs. Ader and Kiyici seem to rely exclusively on the CTA imaging to conclude that decedent was not suffering from mesenteric ischemia during his first admission. Plaintiff's experts sufficiently raised questions of fact precluding summary judgment by opining (i) that the CTA imagery was inadequate as the sole diagnostic tool to determine the presence of (or conversely to rule out) mesenteric ischemia; (ii) that defendants were negligent in failing to order follow-up testing, particularly in light of the finding of splenic infarcts, that the presence of pain disproportionate to the physical examination, and the fact that their initial differential diagnosis of peptic ulcer disease was ruled out by the EGD; and (iii) given the degree of necrosis noted in the autopsy report, that decedent was likely suffering from mesenteric ischemia during his first admission.
Wrongful Death Claim against Dr. Ozcan
Dr. Ozcan argues that: (i) plaintiff "abandoned" her wrongful death claims against Dr. Ozcan her by failing to preserve the issue of the relation-back doctrine, specifically by failing to address the third prong of the relation-back doctrine; (ii) even if plaintiff had not "abandoned" that issue, summary judgment should be affirmed because the record is silent as to whether Dr. Ozcan knew or should have been on notice of the action when it first commenced, and finally; (iii) that even if the relation-back doctrine is applicable in the instant case[*7], it is reserved for application to cases which involve an amended complaint, and not consolidation of two cases.
Plaintiff asserts that the argument that the relation-back doctrine should be applied was made when she opposed Dr. Ozcan's motion to dismiss and thus the issue was thereby preserved for appeal. Interestingly, Dr. Ozcan does not dispute that plaintiff addressed the relation-back doctrine in her opposition, but merely argues that plaintiff only "broadly" invoked the relation-back doctrine when she cross-moved against Dr. Ozcan's first motion to dismiss. It is well-settled law in this jurisdiction that an issue shall be preserved for appeal if it "appeared on the face of the record and which could not have been avoided. . . .[I]f brought to the opposing party's attention at the proper juncture" (see Gonzalez v New York City Health & Hosps. Corp., 29 AD3d 369, 370 [1st Dept 2006]; see also Matter of Knickerbocker Field Club v Site Selection Bd. of City of N.Y., 41 AD2d 539, 540 [2d Dept 1973]). Having acknowledged that she received plaintiff's opposition to the motion which alleges that the relation-back doctrine should be applied to the instant case, Dr. Ozcan was fully on notice that plaintiff intended to argue the application of all factors of the doctrine. Plaintiff sufficiently establishes that the issue has been preserved for appeal.
Dr. Ozcan knew or should have known that but for a mistake by plaintiff the First Action would have been brought against her. Three conditions must be satisfied in order for claims against a defendant to relate back to the filing of a prior pleading against another defendant: (i) both claims arose out of the same conduct, transaction, or occurrence, (ii) the new party is "united in interest" with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (iii) the new party knew or should have known that but for a. . . mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well (Buran v Coupal, 87 NY2d 173, 178 [1995]; see also CPLR 203[c]).
Dr. Ozcan does not substantively dispute that the claims in the prior and instant actions arose out of the same conduct or that she is united in interest with Montefiore. Therefore, the only question to be decided, is whether the third prong of the
relation-back doctrine has been established.
Dr. Ozcan, who was named as a defendant in the First Action, should have known that, but for a mistake, the wrongful death claim would have been brought against her as well (DeLuca v Baybridge at Bayside Condominium I, 5 AD3d 533, 535 [2d Dept 2004] ["The relation-back doctrine may be applied if the party was identified in the prior action but not made a party to that action owing to the plaintiff's failure to comply with the technical requirements for commencement of [*8]an action"]; see also Brown v Midtown Med. Care Ctr.,96 AD3d 641 [1st Dept 2012]), even if she was not still in Montefiore's employ when the action was initiated (see Alamo v Citident, Inc., 72 AD3d 498, 499 [1st Dept 2010] [holding that the defendant doctor can be charged with notice of the action notwithstanding that she was no longer in the corporate defendant's employ when they were timely served with the pleadings]; Scheff v St. John's Episcopal Hosp., 115 AD2d 532, 534-535 [2d Dept 1985]).
Application of the relation-back doctrine is proper even where, as here, a new action has been commenced and consolidated with a prior action (see Town of Guilderland v Texaco Ref. & Mktg.,159 AD2d 829, 831-832 [3d Dept 1990][court held that there was no merit to the argument that the relation-back doctrine only applies to motions seeking amendment of the complaint to join new parties, and did "not consider it fatal that plaintiff has elected to serve a new complaint in action No.2 and seeks consolidation with Action No.1 rather than seeking an amendment of the complaint in the original action"]; see also Cuello v Patel, 257 AD2d 499 [1st Dept 1999]).
Accordingly, the order of the Supreme Court, Bronx County (Michael A. Frischman, J.), entered on or about April 11, 2023, which, insofar as appealed from as limited by the briefs, denied defendants Drs. Nejat Kiyici and Michael Ader's separate motions for summary judgment dismissing the medical malpractice claim against them, granted defendant Mahire Ozcan's motion to renew her prior motion to dismiss the wrongful death claim against her and, upon renewal, granted the motion and denied plaintiff's cross-motion insofar as it sought to deem that claim timely, should be modified, on the law, to deny Dr. Ozcan's motion to renew, and to grant plaintiff's cross-motion to the extent of deeming the wrongful death claim against Ozcan timely, and otherwise affirmed, without costs.
Order, Supreme Court, Bronx County (Michael A. Frischman, J.), entered on or about April 11, 2023, modified, on the law, to deny Dr. Ozcan's motion to renew, and plaintiff's cross-motion to the extent of deeming the wrongful death claim against Ozcan timely, and otherwise affirmed, without costs.
Opinion by Rosado, J. All concur.
Moulton, J.P., Mendez, Rosado, O'Neill Levy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 5, 2024

Footnotes

Footnote 1: That plaintiff's expert surgeon referred to "CT" scans at times, rather than using the more specific nomenclature "CTA," is immaterial as he explicitly opined that the test performed on decedent (i.e., the CTA) was an inadequate imaging modality to detect mesenteric ischemia and that an MRA should have been performed.